### SOUTHGATE BROKERAGE CO., Inc. v. UNITED STATES.

Civ. A. No. 803.

United States District Court
E. D. Virginia.

Feb. 17, 1949.

314

Charles L. Kaufman, Norfolk, Va., for plaintiff.

George R. Humrickhouse, United States Attorney, Richmond, Va., for defendant.

HUTCHESON, Chief Judge.

This action having come on regularly for trial without a jury before one of the Judges of the aforesaid Court, on May 26 and 27, 1948; and the parties having appeared through their respective attorneys, and having produced evidence and filed briefs in support of their respective contentions; and the Court having thereafter considered fully all matters of fact and law presented by the parties:

The Court now makes the following Findings of Fact.

1. This is a suit brought under the Tucker Act, 28 U.S.C.A. § 41(20) [now § 1346] for the recovery of Federal excess profits taxes and interest thereon, assessed against and collected from plaintiff by defendant for the fiscal years ended July 31, 1942, and July 31, 1943, in the aggregate amount of $20,143.93, together with interest thereon at the rate of 6% per annum from May 12, 1947, until paid, and costs.

2. Since September 28, 1926, plaintiff has been, and now is, a corporation organized and existing under the laws of the State of Virginia, having its principal office and place of business at 249–251 Tazewell Street, in the City of Norfolk, Virginia.

3. During the period extending from 1898 to 1926 Thomas S. Southgate (hereinafter called "Southgate") of Norfolk, Virginia, owned and conducted in said City certain businesses dealing in food products.

4. In 1926 David Pender (hereinafter called "Pender"), of said City, desired to purchase a part of said businesses, and after negotiations to that end, on or about September 8, 1926, Southgate agreed to sell and Pender agreed to purchase the good will of a part of said businesses for the sum of $150,000.00, payable in cash.

5. Such agreement resulted from Pender's acceptance of the offer made to him by Southgate in a letter written by Southgate to Pender, dated September 8, 1926, a copy of which is attached to the complaint and marked "Exhibit A."

6. After the consummation of such sale, Southgate was not to have, and he did not have, any interest of any kind whatsoever, either directly or indirectly, in the businesses involved.

7. Pender intended and planned to acquire and conduct said business through a corporation to be organized in Virginia and to invest in said corporation the cash sum of $250,000.00, of which $150,000.00 was to be used to pay Southgate the agreed purchase price of the good will and $100,000.00 was to be used to provide the working capital necessary for the conduct of the business.

8. Southgate, knowing Pender's said intention and acting solely in his own interests and upon his own initiative (through his attorney), insisted upon the consummation of the sale and the formation of the corporation in the manner hereinafter set out, for the sole and obvious purpose of endeavoring to minimize his personal tax liability. Pender's only interest in the matter was to purchase the good will at the agreed price and to carry on the business in corporate form.

9. On September 28, 1926, the plaintiff corporation was chartered under the laws of Virginia with an authorized capital stock consisting of 2500 shares of common stock of the par value of $100.00 per share. The incorporators were Southgate and two of his employees, Daniel M. Thornton and Elias Etheridge, and they subscribed for one share, three shares and one share, respectively, totalling five shares, of plaintiff's capital stock, for

which payment was made in cash at the rate of $100.00 per share on September 28, 1926.

10. On the next day, September 29, 1926, Southgate transferred the good will of said business to plaintiff and in consideration thereof plaintiff issued to Southgate 750 shares of its capital stock, having a total par value and fair market value of $75,000.00, and plaintiff assumed the payment of $75,000.00 of Southgate's indebtedness to two Norfolk banks on loans previously obtained by him.

11. The indebtedness assumed by plaintiff had no relation to the business sold by Southgate, and the asssumption thereof by plaintiff had no business purpose whatsoever. Three of the notes assumed by plaintiff were made after Southgate's agreement with Pender and just prior to the issuance of plaintiff's charter,—one on September 23, 1926, one on September 25, 1926, and one on September 27, 1926. All said notes were to be promptly retired by plaintiff, and payment thereof was made in full by plaintiff on October 6, 1926.

12. Of said 750 shares of stock received by Southgate on September 29, 1926, 250 shares were transferred by him on the same date to his wife, Nettie M. Southgate, and 250 shares were transferred by him on the same date to his son, Herbert S. Southgate. Three days later, on October 2, 1926, Southgate, his said wife and his said son, transferred to Pender their certificates for a total of 750 shares of said stock and received from Pender the total sum of $75,000.00 in cash, all of which was deposited in Southgate's personal bank account. From the very inception, Southgate always intended and was required to have all said stock promptly transferred to Pender in order to fulfill Southgate's obligation to Pender, and Southgate in reality never owned any part of said stock.

13. After such payment on October 2, 1926, Southgate had received, directly or indirectly, $150,000.00 in cash, the entire agreed purchase price of the good will, and did not (even nominally) own any of plaintiff's capital stock.

14. On October 5, 1926, Pender (and his associates) purchased from plaintiff 750 shares of its capital stock and paid therefor to plaintiff the sum of $75,000.00 in cash, and on November 15, 1926, 995 additional shares and paid therefor to plaintiff the sum of $99,500.00 in cash.

15. The good will of the business sold by Southgate had a fair market value on March 1, 1913, of at least $75,000.00, and on the date of sale in 1926 it had a fair market value of $150,000.00.

16. The Bureau of Internal Revenue audited Southgate's Federal income tax return for 1926, and determined and treated the aforesaid transaction as a sale by Southgate for $150,000.00 of good will having a cost basis of $75,000.00 (the March 1, 1913, value), with a resultant taxable gain of $75,000.00.

17. At all times from the very outset, the plaintiff treated said transaction on its books as the purchase by it of said good will for the sum of $150,000.00

18. All the steps taken as above set forth were part of an integral plan which was effectuated for the purpose of carrying out Pender's agreement to purchase said good will for the cash sum of $150,000.00, and his intention to operate said business through a corporation and to invest therein the sum of $250,000.00, of which $150,000.00 was to be used to pay for said good will and the balance of $100,000.00 was to be used for working capital.

19. The effectuation of said plan was completed on November 15, 1926, and at that time plaintiff was possessed of good will of the value of $150,000.00 and cash working capital in the amount of $100,000.00, and had an issued and outstanding capital stock of $250,000.00, consisting of 2500 shares of common stock of the par value and fair market value of $100.00 per share, all of which stock was owned by Pender (and his associates) and none of which was owned by Southgate or any member of his family, either directly or indirectly.

20. Plaintiff duly filed its Federal income tax, declared value excess profits

tax and excess profits tax returns for each of the fiscal years ended July 31, 1942, and July 31, 1943, with N. B. Early, Jr., who was then the Collector of Internal Revenue for the District of Virginia, within the time prescribed by law, and the taxes payable in accordance therewith were duly assessed and paid.

21. During each of said fiscal years, plaintiff's excess profits tax liability was computed on the invested capital basis and plaintiff included in its equity invested capital for each of said fiscal years the sum of $250,000.00 which had been invested as aforesaid in plaintiff's capital stock.

22. The entire amount so included in plaintiff's equity invested capital represented cash or property paid in during 1926 for plaintiff's capital stock, and thereafter constituted a part of plaintiff's equity invested capital.

23. The Commissioner of Internal Revenue eliminated from plaintiff's equity invested capital $150,000.00 of said sum of $250,000.00 in computing plaintiff's excess profits tax liability for each of said fiscal years, which elimination resulted in the illegal assessment and collection from plaintiff of the excess profits taxes and interest for the fiscal years ended July 31, 1942, and July 31, 1943, for the recovery of which this suit was brought.

24. The payment of said taxes and interest was made on May 12, 1947, under protest by plaintiff to the said N. B. Early, Jr., who was then Collector of Internal Revenue for the District of Virginia, and who died on August 15, 1947, prior to the institution of this suit.

25. On or about June 17, 1947, plaintiff duly filed with the Collector of Internal Revenue for the District of Virginia proper claims for the refund of said taxes and interest, together with interest thereon at the rate of 6% per annum from May 12, 1947; and at the time of the institution of this suit, more than six months had elapsed since said refund claims had been filed and said claims had not been allowed.

From the foregoing Findings of Fact, the Court draws the following

## Conclusions of Law.

1. The Court has jurisdiction over the subject matter of this action and over the parties.

2. The aforesaid transaction between Southgate and Pender constituted a sale by Southgate of good will for the cash sum of $150,000.00.

3. Cash aand property of the total value of $250,000.00 were paid in by Pender and his associates, during 1926, for plaintiff's capital stock, and said entire sum of $250,000.00 was properly includible in plaintiff's equity invested capital, under Sec. 718 of the Internal Revenue Code, 26 U.S. C.A. § 718, in computing its excess profits tax liability for each of the fiscal years ended July 31, 1942, and July 31, 1943.

4. Of said sum of $250,000.00 the Government erroneously and illegally eliminated $150,000.00 from plaintiff's equity invested capital, and erroneously and illegally assessed against and collected from plaintiff on May 12, 1947, additional excess profits taxes and interest for the fiscal years ended July 31, 1942, and July 31, 1943, in the respective amounts hereinafter stated.

5. Plaintiff is entitled to recover of and from defendant (1) for the fiscal year ended July 31, 1942, the sum of $8,796.40, plus interest thereon at the rate of 6% per annum from May 12, 1947, to a date preceding the date of the check issued in payment thereof by not more than thirty days, minus the deficiency in income tax of $1,635.89, plus deficiency interest thereon from the due date thereof to the date on which the interest on such $8,796.40 is allowed; and (2) for the fiscal year ended July 31, 1943, the sum of $15,504.93, plus interest thereon at the rate of 6% per annum from May 12, 1947, to a date preceding the date of the check issued in payment thereof by not more than thirty days, minus the deficiency in income tax of $5,095.69, plus deficiency interest thereon from the due date thereof to the date on which the interest on such $15,504.93 is allowed; and (3) the plaintiff's costs allowed by law to be taxed against the defendant.